IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ANNA FONTANA                                                                                         PLAINTIFF

v.                                    Civil No. 05-5109

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                                         DEFENDANT

## MEMORANDUM OPINION

Anna Fontana (hereinafter "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her applications for a period of disability and disability insurance benefits (hereinafter "DIB"), pursuant to *§§ 216(i) and 223* of Title II of the Social Security Act (hereinafter "the Act"), *42 U.S.C. §§ 416(i) and 423,* and for supplemental security income (hereinafter "SSI") benefits, pursuant to *§ 1602* of Title XVI*, 42 U.S.C. § 1381a*.

Plaintiff, whose date of birth is May 29, 1954, was 50 years of age at the time of the August 12, 2004 administrative hearing (T. 220, 212). Plaintiff has an associate degree in nursing (T. 80, 93, 221). While in school, Plaintiff attended regular classes rather than special education classes (T. 93). Plaintiff's past relevant work includes employment as a Registered Nurse (T. 82).

Plaintiff alleges an inability to work due to: post herpetic trigeminal neuralgia; pain in head and face; headaches; Ludwig's Angina; TMJ; 7mm retrolisthesis[1] at L5 and S1; severe

---

[1] Retrolisthesis is the relative posterior displacement of vertebra on the one below it. Retrolisthesis is the result of degenerative disc changes. Indications for surgery are based on severity and duration of symptoms and a neurologic deficit rather than on degree of slip. Also, if there is an obvious increase in deformity, surgery is indicated. The pinch occurs due to

degenerative disc and joint disease; small right central disc protrusion that impinges upon the right S1 nerve root as it eminates from the thecal sac; moderate bilateral neural foramina narrowing; moderate broad based disc bulge at L4-5 that mildly flattens the ventral aspect of the thecal sac; mild bilateral neural foraminal narrowing at L4-5; mild loss of normal lumbar lordosis; prominent osteophytes projecting off the posterior left side of the C6 & C7 vertebral bodies in conjunction with a left lateral disc protrusion which moderately flatten the ventral left lateral aspect of the thecal sac and impinge upon the left C6-7 lateral recess and severely narrow the left C6-7 neural foramen, likely impinging upon the left C7 nerve root; moderate degenerative changes at C6-7; loss of ability to concentrate; depression; muscle spasms; uncontrollable facial tics; post traumatic stress disorder; shortness of breath; swelling; chronic earaches; nausea; chronic bronchitis; uncontrollable crying; sensitivity to temperature extremes; asthma; COPD; left knee instability and pain; sciatica; weakness and fatigue; numbness; radiculopathy into the arms and legs; and, side effects of medication. On March 11, 2003, Plaintiff filed her application for benefits, alleging an onset of date of disability of February 13, 2003 (T. 49-51).

The Social Security Administration denied plaintiff's application initially and on reconsideration. Plaintiff then requested and received a hearing before an Administrative Law Judge (hereinafter "ALJ"), which hearing was held on August 12, 2004, before ALJ Dean C.

---

buckling of the post longitudingal ligament and narrowing of the spinal canal as a result of displacement of the two vertebra. Treatment initially is activity modification and meds for pain control. If the pain is unrelenting despite best efforts or if a progressive neurologic deficit develops, then surgery may be indicated. *http://www.spine-surgery.com/FAQ/faq.htm#FAQ5 (visited June 21, 2006).*

AO72A
(Rev. 8/82)

Metry in Fayetteville, Arkansas (T. 212-261). At hearing, Plaintiff amended her onset date to August 1, 2002 (T. 229, 230). The ALJ rendered a decision adverse to Plaintiff on November 23, 2004 (T. 11-19).

The Plaintiff then petitioned the Appeals Council for review on November 30, 2004 (T. 6-7). The Appeals Council denied review on April 25, 2005 (T. 3-5), thus making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that unfavorable decision (Doc. #1, 9). This matter is before the undersigned by consent of the parties (Doc. #8).

**Applicable Law:**

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. See *Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)*. Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. See *Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000)*. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, see *id.*, or because we would have decided the case differently. See *Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)*.

The Commissioner has established, by regulation, a five-step sequential evaluation for determining whether an individual is disabled.

The first step involves a determination of whether the claimant is involved in substantial

-3-

gainful activity. *20 C.F.R. § 416.920(b)*. If the claimant is so involved, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether claimant has a severe impairment or combination of impairments. *Id., § 416.920(c); see 20 C.F.R. § 416.926*. If not, benefits are denied; if so, the evaluation proceeds to the next step.

The third step involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id., § 416.920(d)*. If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform past work. *Id., § 416.920(e)*. If so, benefits are denied; if not, the evaluation continues.

The fifth step involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given the claimant's age, education and work experience. *Id., § 404.920(f)*. If so, benefits are denied; if not, benefits are awarded.

In addition, whenever adult claimants allege mental impairment, the application of a special technique must be followed at each level of the administrative review process. See *20 C.F.R. § 416.920a(a)*.

The Commissioner is then charged with rating the degree of functional limitation, and applying the technique to evaluate mental impairments. See *20 C.F.R. § 416.920a(d)*. Application of the technique must be documented by the Commissioner at the ALJ hearing and Appeals Council levels. See *20 C.F.R. § 416.920a(e)*. Such documentation, as referred to within the regulations, is referred to as the PRT factors, mentioned previously.

AO72A
(Rev. 8/82)

**Discussion:**

Following the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of August 1, 2002 (T. 12). While the ALJ found that Plaintiff suffered from the severe impairments of COPD and osteoarthritis, he determined at step three that she did not meet any listed impairments (T. 13). The ALJ then found that Plaintiff maintained the residual functional capacity to perform "a significant range of light work" with the following restrictions: only occasional stooping, crouching, kneeling crawling and working overhead; no exposure to dust, fumes, pollutants; and, no working around ladders, ropes or scaffolds (T. 16). With respect to Plaintiff's alleged mental impairments, the ALJ determined that Plaintiff did not suffer from any medically determinable impairments with regard to her allegation of depression (T. 16). The ALJ also made a finding that Plaintiff could not return to her past relevant work as a registered nurse, as she actually performed said work or as it is generally performed in the national economy (T. 17). Thus, the ALJ acknowledged that the burden shifted to the Commissioner at Step 5 to establish that there are other jobs in significant numbers which Plaintiff can perform given her residual functional capacity, age, education and work experience (T. 17). Based upon the Medical-Vocational Guidelines and the testimony of a vocational expert (hereinafter "VE"), the ALJ determined that Plaintiff could perform work as a "health technician with 600 such jobs regionally, and 65,000 jobs in the national economy" (T. 17-18).

On appeal, Plaintiff makes several arguments in her appeal brief[2]. Significantly,

---

[2]Plaintiff's brief was due to be filed on September 28, 2005 (see August 29, 2005 text entry in the official clerk's docket of Plaintiff's case now pending in the United States District Court for the Western District of Arkansas, Fayetteville Division, case number 05-5109).

AO72A
(Rev. 8/82)

Plaintiff raises the issue of whether the ALJ properly analyzed the Plaintiff's nonexertional impairments, her financial ability to obtain treatment and the reliability of the VE testimony. Upon a thorough review of the administrative record, the undersigned finds that the issue of whether the Plaintiff's nonexertional impairment were properly addressed by the ALJ is an issue with merit.

Although the ALJ mentioned Plaintiff's allegations of pain, he made little if any mention of the other significant nonexertional impairments alleged by Plaintiff.

In determining whether the ALJ properly disregarded Plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)* (subsequent history omitted), in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler, 739 F.2d at 1322 (emphasis in original).*

---

However, Plaintiff's counsel did not file her appeal brief until June 20, 2006, some 9 months after the deadline (Doc. #9).

AO72A
(Rev. 8/82)

However, in addition to the requirement that the ALJ consider the Plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992)*. The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993)*.

Here, the record is replete with Plaintiff's allegations of numerous nonexertional impairments, including: pain (T. 215, 232, 233, 234, 235, 236, 237, 238, 239, 240, 245, 247, 74, 76, 77, 78, 80, 81, 88, 89, 90, 91, 92, 93, 94, 104, 106, 121, 129, 131, 133, 135, 144); weakness and fatigue (T. 234, 92, 246); numbness (T. 234, 104, 44); shortness of breath (T. 240, 91, 223, 226, 30, 74, 81, 91, 247, 76, 78, 81, 91, 121); sensitivity to temperature extremes (T. 244); inability to sleep (T. 237); loss of concentration (T. 245, 71, 74, 106); headaches (T. 30, 74, 81, 89, 91, 92, 104, 106); nausea (T. 104, 106); swelling (T. 219, 242); muscle spasms (T. 215, 234, 104, 250, 30); and, side effects of medication (T. 221, 231).

In assessing Plaintiff's allegations, the ALJ found:

> From a review of the medical evidence outlined above, it is reasonable to assume that Ms. Fontanna does experience some limitation due to COPD and osteoarthritis; however, the degree to which her impairments are functionally limiting is an issue which is very much open to question. The undersigned takes note of the fact that the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. In addition, the record does not contain any opinions from the treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. Further, the record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work.

(T. 14-15).

AO72A
(Rev. 8/82)

Such a finding is inconsistent with the evidence of record. The ALJ fails to consider: the objective medical evidence, such as Plaintiff's pulmonary function studies, cervical MRI and lumbar MRI results[3]; Plaintiff's documented allegations of a lack of funds with which to seek treatment; and, numerous medical conditions which cause more than a minimal effect on the claimant's ability to work. *See Hudson v, Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989).* Likewise, the ALJ's conclusory finding is not supported by any analysis within his decision.

Implicit in the ALJ's task of making a credibility determination is the requirement that he "discuss" the *Polaski* factors. *Herbert v. Heckler*, 783 F.2d at 130 (the *Polaski* cases and the Social Security Disability Reform Act of 1984 require that the Commissioner set forth the inconsistencies in the objective medical evidence presented and discuss the factors set forth in the *Polaski* settlement when making "credibility" determinations concerning claimant's subjective complaints of pain).

Here, the ALJ fails to meaningfully examine, discuss or analyze any of the enumerated factors within his decision. *Polaski v. Heckler*, 739 F.2d at 1321-22. The ALJ must discuss and point out the inconsistencies in the record, in order to make a credibility determination. *Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991)* ("it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations"); *Herbert v. Heckler, 783 F.2d at 131* (even though evidence with respect to *Polaski* factors is in the record, those

---

[3] Plaintiff's cervical and lumbar MRI tests were performed on April 23, 2003 (T. 130-131). Therefore, these objective tests address Plaintiff's cervical and lumbar spine issues during the relevant time period. The relevant time period in this case begins with the amended onset date, August 1, 2002, and ends with the date of the ALJ's decision, November 23, 2004 (T. 230, 19).

-8-

factors must be discussed within the ALJ's decision). The ALJ's failure to do so was error.

Upon remand, the ALJ should also discuss what effect, if any, Plaintiff's alleged lack of financial resources had upon her inconsistent medical treatment. The record indicates that Plaintiff lived in a cabin with no running water, no electricity, no telephone, and no natural gas. This cabin belonged to a friend of hers and she lived there without paying any rent. Plaintiff had no job or medical insurance. Plaintiff reported her lack of financial means to the Social Security Administration, her physicians and the ALJ. She specifically reported that she could not seek treatment, obtain medication or renew her nursing license with the state nursing board due to her financial situation. In addition to her friend helping her with the rent free cabin, Plaintiff sought treatment at a free clinic, and postponed her MRI testing due to her lack of finances. Yet, the ALJ failed to consider this evidence when determining that Plaintiff's lack of medical treatment diminished her credibility.

Generally, if a claimant does not follow a prescribed treatment plan without a good reason, he or she will not be found disabled. *20 C.F.R. § 416.930(b) (1984)*. However, the lack of financial resources to pay for medical treatment and/or medication may justify the failure to pursue treatment or follow a treatment plan. *Brown v. Heckler 767 F.2d 451, 452 (8th Cir.1985);Tome v. Schweiker, 724 F.2d 711, 714 (8th Cir.1984).* The ALJ does not discuss the impact of plaintiff's alleged lack of finances on her ability to access treatment or obtain prescribed medication. This constitutes error. To the extent the ALJ found plaintiff not entirely credible, due to a lack of medical treatment and/or prescription medication, we note numerous record citations in which the Plaintiff testified to and otherwise reported her lack of financial means.

Additionally upon remand, the ALJ should examine the objective medical test results when determining from what severe impairments Plaintiff suffers. The objective medical evidence should also be considered by the ALJ in determining Plaintiff's residual functional capacity.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision denying Plaintiff's applications for social security disability benefits is not supported by substantial evidence and should be reversed. We further conclude that this matter should be remanded to the Commissioner for further consideration consistent with this decision.

ENTERED this 1st day of August, 2006.

/s/Bobby E. Shepherd
Honorable Bobby E. Shepherd
United States Magistrate Judge

AO72A
(Rev. 8/82)